UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00032-LLK

JEREMY LEE JOHNSON                                                                                    PLAINTIFF

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. Plaintiff's fact and law summary is at R. 15, and Defendant's fact and law summary in opposition is at R. 20. The parties have consented to the jurisdiction of the undersigned magistrate judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [R. 11.] The matter is ripe for determination.

Because the Administrative Law Judge ("ALJ") failed to identify substantial reasons for giving little weight to Dr. Lopez-Suescum's post-hearing diagnosis and findings and for discounting Plaintiff's alleged limitations due to pain, the Court will REMAND this matter for a new decision and any further proceedings deemed necessary and appropriate by the Commissioner.

### Plaintiff's right groin impairment

Plaintiff was born in 1985 with a very large hernia in his right groin area pointing to the lower quadrant. [Administrative Record ("AR"), p. 1260.] The impairment was repaired with mesh. [*Id.*] Plaintiff experienced recurrence of the hernia in 2009 and again in 2015, each time followed by mesh repair surgery. [*Id.*] Plaintiff testified that he "never got better" (and did not return to work) after his third surgery. [AR, p. 107.] He experiences constant "right groin pain pointing in the direction of the inguinal canal toward the right side of his scrotum." [AR, pp. 1261, 1262.] On a scale from one to ten, Plaintiff's pain is "about an eight every day." [AR, p. 107]

1

Plaintiff apparently is pursuing a products liability action against the manufacturer of the mesh used in one of the surgeries. [AR, p. 107.] "It was polypropylene and they're working on that. They've [had] a recall on that mesh." [*Id.*] About two weeks after the third surgery, realizing that his pain was not getting any better, Plaintiff attempted suicide by overdose. [AR, pp. 110, 118.] Plaintiff takes pain medication and uses cannabis to manage his chronic pain. [AR, pp. 121, 128.]

At the February 2017 administrative hearing, the ALJ noted that the precise origin of Plaintiff's pain was not established and suggested that it may be due to nerve entrapment (as opposed to clear evidence of hernia recurrence). [AR, pp. 113-14.] According to the ALJ, "since they couldn't find, you know, [clear evidence of] a recurrent hernia, there was some talk about some other issues that might be in there like nerve entrapment." [*Id.*] Plaintiff indicated that a pelvic CT-scan is one of the best methods of determining whether there has been a recurrence and, if so, its degree and nature. [AR, p. 115.] Plaintiff has had a pelvic CT-scan, but doctors "never contacted me back or anything." [*Id.*] Plaintiff eventually requested referral to a specialist but was told that "now it was up to me." [AR, p. 116.] According to Plaintiff, doctors do not "want to mess with me because I guess [after three reparation surgeries] they looked at me like I was a liability." [AR, p. 114.] The ALJ acknowledged that "surgeons do tend to be kind of hesitant to go back in there because they do figure, you know, at some point we're just going to be doing more harm than good." [*Id.*]

Plaintiff explained that, at most, he is able to sit for 35 minutes to 1 hour because sitting rquires that he lean forward "right at the bend" of the groin, where he has tender scar tissue. [AR, p. 116.] "[I]t feels like I have to release it a lot to lean over and it hurts." [AR, pp. 116-17.]

Although the ALJ left the record open to obtain a post-hearing consultative evaluation of Plaintiff's limitations due to his right groin impairment [AR, pp. 133-35], the ALJ proceeded to question the vocational expert (VE) based on assumed, provisional limitations. Specifically, the ALJ asked the VE to assume an individual having the following limitations: limited to sedentary work requiring, among other

things, 6 hours of sitting per 8-hour workday; may occasionally stoop, crouch, or climb ramps or stairs; may not crawl, kneel, or climb ladders, ropes, or scaffolds; may frequently handle, finger, or grasp, and may not reach overhead; and can tolerate occasional exposure to extreme cold, vibration, dangerous machinery or unprotected heights. [AR, p. 130.] The VE testified that such an individual can perform a significant number of jobs in the national economy, including 440,000 sedentary, unskilled jobs of assembler, inspector, and surveillance system monitor. [AR, p. 131.]

In March 2017, after the hearing, Dr. Lopez-Suescum examined Plaintiff, observed an ill-defined bulge in Plaintiff's right groin area, which he opined "might require more surgery." [AR, p. 1262.] Examination revealed that Plaintiff's groin area was scarred, indurated [i.e., having become firm or hard especially by increase of fibrous elements, Merriam-Webster], tender, weakened, and atrophied:

> [T]he patient has a sort of … ill-defined bulge in the right inguinal regional almost involving the most power part of the right lower quadrant. The area is rather indurated. There are multiple scars due to previous surgeries. There is no inflammation, however, this scar in the area seems to be sort of fibrotic and tender on palpation. … The patient is constantly complaining of pain in the [groin] area in during the course of the range of motion examination regardless. … The motor strength of the right lower extremity iliopsoas muscle is 0/5 on account of the pain of the right groin and he has developed atrophy of the muscles of the thigh anterior aspect.

[AR, pp. 1261-62.] Dr. Lopez-Suescum diagnosed "[c]omplex pain syndrome of the right groin area with radiation of pain to the external genital especially the right testicle." [AR, p. 1262.]

Among other things, Dr. Lopez-Suescum limited Plaintiff's lifting/carrying to "1 or 2 pounds for about 10 to 15 yards" due to "right groin hernia, recurrent, painful" and limited Plaintiff to 1 hour (each) of sitting, standing, and walking per 8-hour workday (with "lay[ing] down at least 5 hours" during the remaining 5 hours) due to "right groin hernia, recurrent, painful." [AR, pp. 1262, 1265-66.]

**The ALJ's findings**

The ALJ determined Plaintiff's residual functional capacity (RFC) to be the same provisional limitations he asked the VE to assume (at the February 2017 hearing). [AR, pp. 15-16, 130.] The ALJ gave "little weight" to the post-hearing medical opinion from Dr. Lopez-Suescum, which the ALJ himself

3

ordered. [AR, p. 20.] The ALJ determined Plaintiff's complaints of limitations due to pain and other subjective symptoms to be credible only to the extent of the ALJ's RFC finding. [AR, pp. 16-17]. The ALJ denied Plaintiff's disability claim at the fifth and final step of the sequential evaluation process based on a conclusion that Plaintiff can perform a significant number of sedentary, unskilled jobs in the national economy. [AR, pp. 23, 131.]

**The ALJ failed to identify substantial reasons
for giving little weight to Dr. Lopez-Suescum's diagnosis and findings.**

As noted above, as part of his RFC determination, the ALJ gave little weight to Dr. Lopez-Suescum's post-hearing findings. [AR, p. 20.] Plaintiff argues that the ALJ's decision to discount Dr. Lopez-Suescum's findings was not supported by substantial evidence and that "the ALJ errs in considering the medical opinion of the consulting physician [i.e., Dr. Lopez-Suescum]." [R. 15 at 4.] The ALJ identified seven reasons for giving little weight to Dr. Lopez-Suescum's medical opinion. For the reasons below, none is persuasive.

First, the ALJ found that Dr. Lopez-Suescum's findings regarding Plaintiff's exertional abilities to lift/carry, sit, stand, and walk to be extremely restrictive yet "without support." [AR, p. 20.] Dr. Lopez-Suescum's findings are as well supported as Plaintiff's diagnosis of complex pain syndrome permits. The ALJ indicated that he might have been willing to accept additional restrictions (beyond those the ALJ gave to the VE) if there were clear evidence of hernia recurrence (as opposed to the "ill defined bulge" observed by Dr. Lopez-Suescum) or nerve entrapment. [AR, pp. 17, 113-14.] However, (rather than recurrence or entrapment), Dr. Lopez-Suescum diagnosed "[c]omplex pain syndrome of the right groin area with radiation of pain to the external genital especially the right testicle." [AR, p. 1262.]

Complex regional pain syndrome is a chronic pain syndrome resulting from trauma or surgery to a body part. Social Security Ruling (SSR) 03-2p, 2003 WL 22399117, at *1 ("Evaluating Cases Involving … Complex Regional Pain Syndrome"). It is characterized by sympathetic (fight or flight) nervous system dysfunction at the site of the precipitating trauma, and the pain is characteristically out of proportion to

4

the severity of the precipitating injury. *Id.* Objectively, one may observe changes in the blood vessels, skin (color and texture), and musculature (atrophy and mobility). *Id.* Additionally, there may be "extreme sensitivity to touch or pressure" applied to the affected area. *Id.* at *6. Consistent with the foregoing diagnostic criteria, Dr. Lopez-Suescum found Plaintiff's groin area to be scarred, indurated, tender, weakened, and atrophied [AR, pp. 1261-62], and the ALJ noted that examiners noted "hypersensitivity or exaggerated response to mild touching at times." [AR, p. 17.] The ALJ found that Plaintiff suffers from severe, or vocationally significant, "history of recurrent right inguinal hernia" but does not discuss Dr. Lopez-Suescum's diagnosis of "complex pain syndrome." [AR, pp. 13, 1262.]

Second, the ALJ found that Dr. Lopez-Suescum's observation that Plaintiff exhibited 0 of 5 strength in the right iliopsoas muscle to be "not a consistent finding in the longitudinal treating record." [AR, p. 20.] Yet the ALJ cited no prior finding that Plaintiff exhibited strength in his right iliopsoas muscle. Dr. Lopez-Suescum's finding of lack of strength was supported by objective medical evidence, i.e., "atrophy of the muscles of the thigh anterior aspect." [AR, p. 1262.]

Third, the ALJ found that Dr. Suescum-Lopez, "in explaining the claimant's limited ability to stand and walk, … reported the claimant 'lays down at least 5 hours?' suggesting he relied exclusively on a subjective complaint that he himself questioned." [AR, p. 20.] Dr. Lopez-Suescum limited Plaintiff to 1 hour (each) of sitting, standing, and walking per 8-hour workday due to "right groin hernia, recurrent, painful." [AR, pp. 1265-66.] This resulted in a total of 3 hours of sitting, standing, and walking per 8-hour workday. The form asked Dr. Lopez-Suescum, "[i]f the total time for sitting, standing and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?" and Dr. Lopez-Suescum responded "lays down at least 5 hours?" [AR, p. 1266.] Contrary to the ALJ's finding, Dr. Lopez-Suescum's response does not indicate that Dr. Lopez-Suescum "relied exclusively on a subjective complaint that he himself questioned." [AR, p. 20.] Dr. Lopez-Suescum simply found that Plaintiff's medical condition warrants a finding that he can sit/stand/walk for only 3 hours during an 8-

5

hour period, and he had no information as to what Plaintiff would do during the remaining 5 hours (and it is irrelevant).

Fourth, the ALJ found that Dr. Lopez-Suescum, "[i]n support for the claimant's postural limitations[,] … simply wrote, 'lives at ground level.'" [AR, p. 20.] While the fact that Plaintiff lives at ground level does not support postural limitations (restricting his abilities to climb stairs, ramps, ladders, scaffolds, balance, stoop, kneel, crouch, crawl), the limitations are supported by Dr. Lopez-Suescum's finding that Plaintiff is limited in his range of motion and strength due to groin pain and atrophy. [AR, pp. 1261-62.]

Fifth, the ALJ found that Dr. Lopez-Suescum "assesses limitations on use of foot controls without describing an underlying impairment or physical findings to support the limitation." [AR, pp. 20, 1267.] Dr. Lopez-Suescum found that Plaintiff is limited in his ability to operate foot controls for the same reason Plaintiff is limited in his abilities to sit, stand, and walk, i.e., "right groin hernia, recurrent, painful." [AR, pp. 1265-66.]

Sixth, the ALJ found that Dr. Lopez-Suescum failed to cite any clinical support for finding that Plaintiff can only occasionally tolerate environmental conditions such as humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, heat, and vibrations. [AR, pp. 20-1269.] This oversight is not of case-dispositive significance because there is no indication that the sedentary, unskilled jobs the ALJ found Plaintiff can perform [AR, pp. 23, 131] require more than occasional exposure to these conditions.

Seventh, the ALJ found that Dr. Lopez-Suescum "is unsure if the claimant needs a restriction from noise levels despite no hearing complaints." [AR, pp. 20, 1269.] Dr. Lopez-Suescum's admission that (due to lack of evidence/testing) he does not know whether Plaintiff needs to avoid loud noises does not undermine the significant exertional and postural limitations he opined.

6

**The ALJ failed to identify substantial reasons
for discounting Plaintiff's alleged limitations due to pain.**

The ALJ found that Plaintiff's complaints of limitations due to pain and other subjective symptoms are credible only to the extent of the ALJ's RFC findings. [AR, pp. 16-17]. Plaintiff argues that this finding was not supported by substantial evidence and that the ALJ's "symptoms evaluation is flawed." [R. 15 at 6.]

In addition to the post-hearing physical evaluation from Dr. Lopez-Suescum, the ALJ obtained a post-hearing mental evaluation from licensed psychological practitioner Annette Freel, M.S. Ms. Freel apparently was unaware of Dr. Lopez-Suescum's diagnosis of complex pain syndrome [AR, p. 1262], which, by definition, occurs when "the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." Social Security Ruling (SSR) 03-2p, 2003 WL 22399117, at *1. Ms. Freel found that Plaintiff is "very focused on his pain … that is perceived as debilitating," diagnosed "somatic disorder with pain, with contributing psychological factors," and recommended treatment focused on reducing Plaintiff's "emotional overlay" and his "thinking he cannot do anything because of his pain." [AR, pp. 1277-78.] Additionally, Ms. Freel diagnosed marijuana use disorder, alcohol use disorder in partial remission, and misuse of opioid mediation. [AR, pp. 1274, 1278.]

The ALJ referenced Ms. Freel's findings in support of a conclusion that, "[c]ombined with [Plaintiff's] history of opioid abuse and exaggerated pain responses, the undersigned finds the weight of the evidence inconsistent with the claimant's allegations." [AR, p. 18.] In referencing Ms. Freel's findings, which did not take into account Dr. Lopez-Suescum's diagnosis, the ALJ unfairly psychologized a possible sympathetic nervous system dysfunction as a somatoform disorder and treated Plaintiff's use/abuse of pain medication as primarily a behavioral problem.

**Order**

Because the ALJ failed to identify substantial reasons for giving little weight to Dr. Lopez-Suescum's post-hearing diagnosis and findings and for discounting Plaintiff's alleged limitations due to pain, this matter is hereby REMANDED for a new decision and any further proceedings deemed necessary and appropriate by the Commissioner.

January 29, 2019

**Lanny King, Magistrate Judge
United States District Court**